# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6990 | **DATE** | 1/28/2004 |
| **CASE TITLE** | Marlon Hammond, #B-16387 vs. Warden Kenneth Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendant's motion for summary judgment [36-1] is granted. The Clerk is directed to enter judgment in favor of the defendant and against plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | JAN 29 2004 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 1/28/2004 date mailed notice |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials |

Document Number: 44

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARLON HAMMOND, #B-16387, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 02 C 6990 |
| | ) |
| KENNETH BRILEY, et al. | ) HONORABLE JOAN H. LEFKOW |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, two officers at the Stateville Correctional Center, violated the plaintiff's constitutional rights by subjecting him to cruel and unusual conditions of confinement and by acting with deliberate indifference to his medical needs. This matter is before the court for consideration of the defendants' motion for summary judgment. For the reasons stated in this order, the motion will be granted.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

44

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

## FACTS

The plaintiff is a state prisoner, confined at the Illinois River and Stateville Correctional Centers at all times relevant to this action. (Defendants' Exhibit 2, Inmate Occupancy History Sheet.) The defendant Daniel Artl is a correctional officer at Stateville, assigned to the "F" Unit where the plaintiff was assigned while housed at Stateville. (Defendants' Exhibit 3, Affidavit of Daniel Artl, ¶ 2.) The defendant Kenneth Agnew, now retired, was a captain in "F-House" at the time of the events giving rise to this lawsuit.[1] (Defendants' Exhibit 4, Affidavit of Kenneth Agnew, ¶¶ 1-2.)

The following facts are uncontested for purposes of this motion (or if disputed are nevertheless not outcome-dispositive): On April 26, 2002, while confined at the Illinois River Correctional Center, the plaintiff saw an optometrist regarding blurred long distance vision. (Exhibit 5, Affidavit of Willard Elyea, M.D., IDOC Medical Director, ¶ 6.) At the time of the plaintiff's examination, his vision with the glasses he had was 20/30 in the left eye, 20/25 in the right eye, and

---

[1] By Minute Order of October 7, 2002, the court dismissed the complaint as to Warden Kenneth Briley pursuant to 28 U.S.C. § 1915(e)(2)(B) for lack of personal involvement/no cause of action arising from the inmate grievance process.

2

20/25 with both eyes. (*Id.*, ¶ 7; Plaintiff's Exhibit 7, Medical Progress Notes dated April 26, 2002.) The optometrist ordered a new pair of glasses for the plaintiff to correct his vision to 20/20. (Elyea Affidavit, ¶ 7.) Eyeglasses are manufactured at the Dixon Correctional Center; it usually takes between thirty and sixty days for an inmate to get new eyeglasses. (*Id.*, ¶ 8.)

Twelve days later, on May 8, 2002, the plaintiff was temporarily transferred from the Illinois River Correctional Center to the Stateville Correctional Center on a court writ. (Offender Tracker Sheet.) The plaintiff remained at Stateville until May 29, 2002, for a total of three weeks. (*Id.*; Exhibit 1, Deposition of Marlon Hammond, at p. 6.)

A medical screening was performed upon the plaintiff's arrival at Stateville. (Elyea Affidavit, ¶ 9; Plaintiff's Deposition, p. 10.) The examination revealed no significant medical needs or conditions. (Elyea Affidavit, ¶ 9.)

The plaintiff claims that in mid-May 2002, he started experiencing headaches and dizziness. (Plaintiff's deposition, p. 70; Plaintiff's Affidavit, ¶ 12.) The plaintiff still gets the headaches, even with glasses. (*Id.* at p. 69.) At his deposition, the plaintiff stated that he believed that his headaches were triggered by fatigue. (Plaintiff's Deposition, p. 70.) In response to the defendants' motion for summary judgment, the plaintiff asserts that the headaches were caused by having to strain to read in the dark. According to Elyea, the plaintiff's allegation that he suffered headaches as a result of not having an updated prescription for eyeglasses is "unfounded," as "there is no medical relation between these complaints." (Elyea Affidavit, ¶ 13.) Although it is possible that the plaintiff's uncorrected astigmatism caused headaches at the time (Plaintiff's Exhibit 7, (unnamed) Medical Treatise, p.2), Elyea further states that "there is no medical reason that would support plaintiff's

claims that he is suffering any type of permanent injury" as the result of the delay in receiving new eyeglasses. (Elyea Affidavit, ¶ 14.)

The plaintiff did not see an optometrist or ophthalmologist during the three weeks he was confined at Stateville. (Plaintiff's Affidavit, ¶ 13.) Inmates who are temporarily transferred from one facility to another are supposed to be given the same medical treatment as all other inmates. (Elyea Affidavit, ¶ 11.) Inmates seeking medical care must follow proper procedures. (*Id.*) Medical technicians and nurses perform daily rounds in all of the living units and are available to tend to inmates' health complaints and concerns. (*Id.*) If an inmate were to request medical treatment, the medical staff is required to keep a record of that request. (*Id.*) There is no record in the plaintiff's files that he suffered from headaches or had any other medical problems while housed at Stateville. (*Id.*, ¶ 12.) (The plaintiff nevertheless insists that he was denied medical treatment when he complained of headaches and vision problems because his master file had not been transferred with him to Stateville. (Plaintiff's Local Rule 56.1 Statement, ¶ 32.))

The parties dispute whether the plaintiff's cell had hot water. The plaintiff contends that only cold water came from the hot water tap. (Plaintiff's Affidavit, ¶ 4.) The defendants maintain that because all of the hot water in Unit F is heated at a central location, then distributed to the cells, if one cell had no hot water, none of the cells would have had hot water. (Griffin Affidavit, ¶ 16.) Regardless, it is undisputed that the plaintiff was able to shower at least once a week. (Plaintiff's deposition, p. 63.) The shower had hot water. (*Id.*)

Each cell in the "F" Unit has individual light fixtures inside. (Plaintiff's Rule 56.1 Filing, ¶ 15.) Fluorescent light fixtures around the guard tower illuminate the entire Unit F cellhouse. (Artl Affidavit, ¶ 8; Plaintiff's Deposition, p. 21.) The ambient lighting in the common areas of Unit F

4

is "akin to daylight twenty-four hours a day." (Artl Affidavit, ¶ 9.) The plaintiff's cell door had a security glass front. (Plaintiff's Deposition, p. 13.)

The plaintiff's cell and the cellblock itself had windows to the outside. (Artl Affidavit, ¶ 10.) During the daytime, the windows allowed additional, natural light into cells. (Artl Affidavit, ¶ 9(B); plaintiff's deposition at p. 13.) Sunlight provided "ample" light to the individual cells. (Artl Affidavit, ¶ 9; plaintiff's deposition at p. 21.) At least in the morning, the plaintiff had adequate sunlight to read, although at other hours of the day, he had to "scoot off in the corner" to catch the sun's rays. (Plaintiff's deposition at p. 22.)

Cell 253 was not a "condemned cell." (Artl Affidavit, ¶ 10.) (The plaintiff's assertion to the contrary is unsupported by any competent evidence, notwithstanding the hearsay of what anyone may have told him.)

On May 14, 2002, the plaintiff filed a grievance claiming that since his arrival days earlier, his cell had been without lights and hot water. (Plaintiff's Exhibit 4, Committed Person's Grievance.) The plaintiff additionally asserted that when he complained to the defendant Artl, the officer's only response was, "Lights and hot water is (sic) a privilege in F-House." (*Id.*; Plaintiff's Exhibit 6, Affidavit of Marlon Hammond, ¶ 5.) (Although Artl claims that he does not remember the plaintiff, he denies that he ever would have made such a statement. (Artl Affidavit, ¶ 5.)) The plaintiff did have blankets, sheets, pillows, a mattress, toilet paper, soap, toothpaste, towels, bath slippers, and a working toilet. (Plaintiff's deposition, pp. 16, 22.)

The plaintiff asserts that he also complained to Agnew on May 9, 2002, while the officer was making his rounds. (Plaintiff's Affidavit, ¶ 6; Plaintiff's Deposition, pp. 34-35.) Agnew allegedly told the plaintiff to speak to a gallery officer. (*Id.*) Although Agnew says that he has no independent

5

recollection of the plaintiff, he agrees that if an inmate had a complaint about his cell conditions, he would have directed the inmate to follow the chain of command and let the gallery officer know about the problem. (Agnew Affidavit, ¶ 5.) Agnew is not responsible for cell repairs. (*Id.*, ¶ 6.)

Upon the plaintiff's return to the Illinois River Correctional Center on May 29, 2002, he underwent another medical examination and orientation interview. (Elyea Affidavit, ¶ 10.) No significant medical problems were revealed during the screening. (*Id.*)

The plaintiff was issued his new glasses on June 13, 2002, at the Illinois River Correctional Center (about seven weeks after the optometrist ordered them). (*Id.*, ¶ 8.)

## DISCUSSION

The defendants' motion for summary judgment must be granted. The plaintiff has no triable Eighth Amendment claim with respect to either the conditions of his confinement or the alleged denial of medical care. Although the court previously denied the defendants' motion to dismiss the complaint for failure to state a claim, the court noted that the plaintiff's claims were "borderline" and that denial of the motion to dismiss was a "somewhat close call." *See* Memorandum Opinion and Order entered April 4, 2003, at pp. 3-4. The more fully developed record, in which the defendants address each of the various concerns articulated in the prior Memorandum Opinion and Order, establishes that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that the conditions of the plaintiff's confinement were so barbarous as to amount to "cruel and unusual punishment."

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement. . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, prison conditions violate the Eighth Amendment only when

6

they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), *citing Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

In order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant official acted with deliberate indifference. *Farmer*, 511 U.S. at 834. As the Court of Appeals has explained, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only to that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

In this case, the plaintiff has not satisfied the objective prong required for Eighth Amendment liability. The plaintiff's deprivations simply did not cross the line from "inconvenience and discomfort" to the level of a denial of basic human needs. *See, e.g., Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir.), 484 U.S. 935 (1987); *Neal v. Clark*, 938 F. Supp. 484, 486 (N.D. Ill. 1996) (Alesia, J.). "Cruel and unusual punishment" requires something more than routine discomfort. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Punishment in the constitutional sense requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000).

A. Inoperative Light

Artl denies ever having said that lights in his cellhouse were a "privilege;" Agnew does not recall the plaintiff but seems to admit that, in general, he would have told an inmate to direct any

7

concerns about maintenance issues to a gallery officer. The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.) The court will therefore assume for summary judgment purposes that both Artl and Agnew were aware of the plaintiff's need for repair of the light or new light bulbs and that both failed to take any action.

It is inexcusable if Artl and Agnew refused to take the simple step of getting the plaintiff new light bulbs, putting in a maintenance request for him, or moving him to another cell. Nevertheless, the lack of a working light in the plaintiff's cell did not exceed "contemporary bounds of decency." While the cell itself had no working light, the evidence shows that large overhead light fixtures (and, during the daytime, natural light) illuminated the plaintiff's cell. Although the plaintiff disputes just how much light passed into the interior of his cell, he admits that he was able to read in his cell, at least in the morning; furthermore, he has expressly dropped his claims that the lack of light interfered with his First Amendment rights to read his Bible and work on litigation. Moreover, after the first week (during which the prison was on "lockdown," *see* Plaintiff's Deposition, p. 60), the plaintiff was allowed to leave his cell at least to go to the yard for recreation (*Id.*, p. 64) and to meet with visitors (*Id.*, p. 63).

Given that the totality of the plaintiff's conditions of confinement were otherwise acceptable (the plaintiff concedes that, except for hot water, his basic needs were met), the lack of an overhead light for three weeks fails to fall so far below minimum standards as to violate the Eighth Amendment. The matter does not rise to the level of cruel and unusual punishment. *Contrast Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences

and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta").

As an additional bar to recovery, because the plaintiff suffered no real physical injury–only understandable frustration–he has no compensable damages under the Civil Rights Act. The Prison Litigation Reform Act dictates that "(n)o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997) (upholding the constitutionality of 1997e(e)). *See generally, Robinson v. Page*, 170 F.3d 747 (7th Cir. 1999). There is no medical evidence to support an inference that poor lighting would have adversely affected the plaintiff's health or eyesight. The plaintiff is not entitled to damages for going without an interior cell light.

Even if it is assumed that the dizziness and headaches the plaintiff claims to have suffered on account of the inadequate lighting amounted to a physical injury, the defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. The court then determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. Sch. Dist. 110*, 123 F.3d

9

1010, 1013 (7th Cir. 1997). Only if the rights were clearly established may the official be liable for monetary damages. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997)

As recently as March 2002, a fellow district judge noted that the law was "unsettled" and that "(n)o Seventh Circuit case has held that inadequate lighting can constitute a violation of a prisoner's Eighth Amendment rights." *Martin v. Snyder*, No. 00 C 0983, 2002 WL 484911, at *6 (N.D. Ill. Mar. 28, 2002). Under the circumstances of this case, where the plaintiff had ambient light and was able to spend time out of his cell, the defendants' failure to rectify the plaintiff's problem–while certainly no cause for commendation–did not constitute conduct the unlawfulness of which would have been apparent in light of existing law. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The defendants are entitled to qualified immunity on the plaintiff's Eighth Amendment claim because neither statutes nor case law have established a right of inmates to proper lighting in their cell. The defendants did not violate a clearly established right.

## B. No Hot Water

Again, the court accepts as true, though contested by the defendants, that the plaintiff's cell had no hot water. Nevertheless, the lack of a functioning hot water spigot likewise fails to rise to the level of constitutional magnitude. As noted above, the plaintiff's basic needs were met; moreover, the plaintiff has conceded that he was able to shower at least once a week. In light of the totality of the plaintiff's living conditions, no reasonable person could find that the lack of hot water caused him any compensable injury. The plaintiff's confinement in a cell without hot water, while undoubtedly inconvenient, is not actionable under 42 U.S.C. § 1983. *Compare Easter v. Cooper*, No. 91 C 4520, 1995 WL 109343, at *3 (N.D. Ill. Mar. 10, 1995) (inmate placed in a cell with graffiti and no running water for seven days had no cognizable constitutional claim); *contrast*

*Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (leaving a prisoner in a cell for three days without running water, dry clothing, bedding, or cleaning supplies, and in which feces were smeared on the walls, may fall below the threshold of decency set by Eighth Amendment). In this case, the lack of hot water did not threaten the plaintiff's physical or mental well-being.

### C. Denial of Medical Care

The plaintiff has failed to demonstrate that he has a triable claim with respect to the purported denial of needed medical care. It is well settled that a prison guard's deliberate indifference to an inmate's serious medical condition violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). As with conditions claims, deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837; *Sherrod*, 223 F.3d at 610. Here, the plaintiff has satisfied neither prong.

The court need not resolve the parties' factual dispute as to whether the plaintiff ever sought needed medical care while confined at Stateville. It is undisputed that medical evaluations performed upon the plaintiff's arrival at Stateville and his return to the Illinois River Correctional Center revealed no significant health problems. Even if the plaintiff did ask to see a doctor at Stateville, his condition was not serious enough to be actionable under 42 U.S.C. § 1983.

The plaintiff's eyesight with the glasses for which he was awaiting replacement was 20/30 in one eye and 20/25 in the other, hardly a drastic under-correction. Furthermore, the plaintiff has no evidence other than his own layman's opinion that his poor eyesight caused his headaches. At

his deposition, the plaintiff admitted that he thought his headaches were caused by fatigue and that he still gets them, (Plaintiff's deposition, p. 69.), although in his materials opposing summary judgment he blames the headaches on his astigmatism and the poor lighting. In Dr. Elyea's expert opinion, any relation between the headaches and the lack of new eyeglasses is "unfounded." (Elyea Affidavit, ¶ 13.) Regardless, even if the plaintiff had seen a doctor, he would have still had to wait to get his new eyeglasses, which were being manufactured at the Dixon Correctional Center. In addition, the plaintiff has retracted his claim that he was completely unable to read his Bible or legal materials during the time period in question.

Even if the court were to assume that there was a link between the plaintiff's need for new glasses and his headaches and nausea, the plaintiff's symptoms were not serious enough to implicate Eighth Amendment concerns. *See, e.g., Bates v. Sullivan*, 6 Fed. Appx. 425, 428 (7th Cir. 2001) (shortness of breath and headaches did not constitute a serious medical need), *citing Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999) (breathing problems, chest pains, dizziness, sinus problems and headaches are "not sufficiently serious to be constitutionally actionable"); *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir.1996); *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999), *citing Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) ("a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution"). The plaintiff's alleged health problems were not sufficiently grave to implicate the Eighth Amendment.

Finally, even if the plaintiff did have a serious medical need, nothing in the record supports an inference that the named defendants were responsible for denying him access to medical care. The plaintiff's grievance and affidavits indicate that he asked (unidentified) "staff," his caseworker,

medical technicians, and nurses to see a doctor. *See also* Plaintiff's Deposition at pp. 40-45. Nowhere has the plaintiff said that he made a request to Artl or Agnew for medical attention. The plaintiff has failed to establish the defendants' direct, personal involvement in the denial of medical care, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted). Because the plaintiff has failed to show that the defendants were personally involved in the alleged denial of access to medical care, they cannot be held liable under 42 U.S.C. § 1983.

In sum, for all of the foregoing reasons, the defendants' motion for summary judgment must be granted. Even viewing the record in the light most favorable to the plaintiff and resolving all factual disputes in his favor, the court finds that the conditions about which he complains did not approach the threshold of Eighth Amendment concern. Any temporary hardships or deprivations the plaintiff endured for three weeks were not of constitutional magnitude. The defendants, in short, are entitled to judgment as a matter of law.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $255 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, the plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as

frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). If the appeal is found to be non-meritorious, the plaintiff may be assessed a "strike."

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket #36) is granted. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

ENTER:

JOAN H. LEFKOW
United States District Judge

DATED: January 28, 2004